IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JODENE HEIDER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04-6376-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JOANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Jodene R. Heider
P.O. Box 3855
Eugene, Oregon 97403

    Pro Se Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Page 1 - OPINION AND ORDER

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

    Attorneys for Defendant

KING, Judge:

Pro se plaintiff Jodene Heider[1] brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous

---

[1] Heider was represented by an attorney at the hearing before the ALJ.

Page 2 - OPINION AND ORDER

work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of

"not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

On May 28, 2004, the ALJ found that Heider had severe impairments of pseudotumor cerebri[2] and a back disorder and nonsevere impairments of epilepsy and asthma. The ALJ

---

[2] "An abnormal condition characterized by increased intracranial pressure, headaches of varying intensity, and papilledema without any demonstrable intracranial lesion and that tends to occur in overweight women from 20 to 50 years of age also called benign intracranial hypertension." Merriam-Webster's Medical Dictionary (2002), available at http://dictionary.reference.com/search?q=pseudotumor+cerebri&r=66.

Page 4 - OPINION AND ORDER

concluded that the impairments were not severe enough to meet or equal a listed impairment, either examined singly or in combination. In reviewing the medical record, the ALJ gave no weight to the limitations stated by Dr. Jacobs. The ALJ also found that Heider is not entirely credible in her assertion of limitations. He assessed a residual functional capacity of light exertion work; lifting 20 pounds occasionally; lifting and carrying 10 pounds frequently; limited from climbing ladders; may occasionally stoop and crouch; should avoid concentrated exposure to fumes, dust, gases, and odors; and avoid even moderate exposure to hazards such as unprotected heights and moving machinery. Since Heider's past work was all at the medium exertion level, the ALJ found that she could not return to any of the jobs. Based on vocational testimony, the ALJ concluded that Heider could work as a sedentary assembler, an addresser, and an office helper. Thus, the ALJ found that Heider was not disabled as defined by the Act.

## FACTS

Heider, who was 46 years old at the date of the ALJ's decision, alleges disability since December 31, 1999[3] due to seizures, pseudotumor cerebri, asthma, and back pain. Heider finished three years of college after returning to school in 1998 and has worked as a home health aide, certified nursing assistant, line prep cook, and veterinary assistant. The university has provided some accommodations to Heider due to her difficulties processing information. At the time of the hearing, she was not formally enrolled but was working on clearing her incomplete classes from prior terms. On a typical day, Heider would monitor one class, then work in the

---

[3] Heider's original application alleged an onset date of September 15, 1994 but she amended the date two months later. Tr. 60-63

computer lab researching a paper, work on an incomplete class, and then spend the rest of the day at the student union.

To treat the pseudotumor cerebri, Heider had a shunt inserted in 1998 that drains excess cerebral fluid into her back. The shunt malfunctions at times, requiring surgery to repair it. Surgical repairs have been made three times and, at the time of the hearing, Heider was searching for a neurosurgeon to replace it again. When the shunt malfunctions, Heider complains that she gets severe pain in her head, ears, and eyes and becomes very slow in processing information. As a temporary fix, Heider gets a spinal tap which immediately relieves her symptoms until the fluid builds back up. The emergency rooms are reluctant to perform any more spinal taps because she has had nearly 100 of them.

The shunt has weakened the disks in Heider's back that are near where the shunt conveys the extra fluid. Heider had surgery to repair ruptured disks in April 2003. Her back still causes her pain which radiates into her leg.

Heider has a seizure disorder, which has been controlled with medication since 2000, reducing the seizures to a few a year. Heider does have auras and brief periods where she goes blank.

## DISCUSSION

It is difficult to determine the scope of any error Heider contends exists in the ALJ's analysis, other than she believes she is disabled. I have reviewed the record thoroughly and will address two typical areas of contention.

The first issue is the fact that the ALJ gave no weight to Dr. Jacobs' residual functional capacity statement. On May 6, 2003, Dr. Jacobs, Heider's pulmonologist for a while, completed

a DDS form which stated that due to her asthma, Heider could walk or stand for four hours in an eight hour day and sit one to two hours in an eight hour day and that the restrictions began in 1994 and would continue for a lifetime.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ noted that Dr. Jacobs did not treat Heider before 1997 and thus concluded that the doctor's citing of restrictions beginning three years earlier is of doubtful validity. The ALJ noted the extent of Heider's daily activities, all suggesting that her asthma did not require restrictions at this level. Finally the ALJ believed the form was internally inconsistent because asthma should make it harder to stand and walk than to sit but the form indicated the contrary.

Page 7 - OPINION AND ORDER

These reasons, which are all supported by the record, are clear and convincing reasons for rejecting Dr. Jacobs' opinion.

The second issue is the ALJ's discounting of Heider's credibility.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

The ALJ compared Heider's daily activities with her stated limitations. Heider had lived independently and completed all of her own household chores. She engaged in several hobbies for many hours a week, including baking, bicycling, walking, speaking foreign languages, playing musical instruments, and being a member of the University of Oregon marching band. Heider attended the university and traveled to Europe. Due to the level of activity, the ALJ

Page 8 - OPINION AND ORDER

concluded that Heider's limitations were exaggerated. The ALJ also noted discrepancies in Heider's account of her estrangement from her family.

The ALJ has given clear and convincing reasons for his rejection of Heider's credibility.

I note that in Heider's objections, she explains that many of these facts have changed over the years, including up to the present. Heider also filed several medical records from after the date of the ALJ's opinion. For example, her attorney forwarded to the Appeals Council a letter dated May 10, 2004 from Dr. Mehlhaff which states in full: "As the primary physician of Jodene Heider, I am writing to verify that Jodene is completely unable to work at this time due to ongoing medical illnesses. Please do not hesitate to contact me if further information is required." Tr. 748. There are no medical records from Dr. Mehlhaff in the record. This is an inadequate basis to remand for rehearing.

Heider submitted an April 27, 2005 Notice of Disapproved Claim, apparently for Heider's application for supplemental security income filed subsequent to the DIB application that is before me. If Heider believes that her condition has worsened so that she would be found disabled under the Act, she should apply again.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this ____28th_____ day of September, 2006.

                                                    /s/ Garr M. King
                                                    Garr M. King
                                                    United States District Judge